IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2025 Session

## CASSANDRA (AVERITT) MCGUIRE v. BRIAN LEWIS

**Appeal from the Juvenile Court for Dickson County**
**No. 08-03-096-M    Craig S. Monsue, Judge**

_____

**No. M2024-01242-COA-R3-JV**

_____

In this appeal from the trial court's 2024 final order disposing of her untimely motion, Appellant fails to properly cite to the record or legal authority and offers no argument that does not stem from alleged errors in the trial court's 2008 child custody modification or 2012 child support order. Because these procedural and substantive deficiencies prevent effective appellate review, this appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right;  Appeal Dismissed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Cassandra (Averitt) McGuire, Joelton, Tennessee, Pro se.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case began with the filing of a petition to establish paternity and related economic issues in the Dickson County Juvenile Court ("the trial court") in August 2003. Therein, Plaintiff/Appellant Cassandra (Averitt) McGuire ("Mother") alleged that Defendant/Appellee Bryan Lewis ("Father") was the biological father of Drake, born in 2001.[1] Mother requested that Father be required to pay child support and certain other expenses. Father admitted his paternity but requested a deviation from the child support guidelines and denied responsibility for any other expenses. Father also filed a counter-petition for joint custody of the child. The parties filed an agreed permanent parenting plan in January 2004, naming Mother the child's primary residential parent and setting Father's child support obligation at $85.00 per week. The plan was then entered by the trial court in

---

[1] Although Drake is approximately twenty-four years old as of the filing of this Opinion, we will generally refer to him as "the child" throughout. No disrespect is intended.

April 2004.

Father filed a petition to modify the parenting plan in December 2007. Father alleged that there had been a material change in circumstances, filed a proposed parenting plan naming himself the primary residential parent, and requested that Mother be required to pay child support. Father also alleged that he feared Mother would refuse any future visitation after receiving the petition, and so requested a temporary restraining order preventing her from interfering with his possession of the child. The trial court entered a temporary restraining order the same day, enjoining Mother from "interfering with [Father's] custody of the minor child[.]" Father subsequently moved to terminate his child support obligation retroactively to the entry of the restraining order. Mother filed a counter-petition for modification of support in January 2008.

The trial court entered an initial order on February 1, 2008. Therein, the trial court named Father the primary residential parent and set visitation for Mother. Father's child support obligation was temporarily suspended retroactive to the December 2007 restraining order, which was, in turn, made into a temporary injunction preventing either party from removing the child from the court's jurisdiction overnight.

All remaining issues were reserved, to be heard at a final hearing eventually held in May 2008. Father subsequently filed a motion for specific findings of fact.

The trial court entered an order on November 4, 2008, finding that "there ha[d] occurred a substantial and material change in circumstances[.]" The trial court named Father the primary residential parent and set visitation for Mother, the same "being in the best interest of the child." Father's $170.00 child support arrearage was set off against $3,546.52 in medical bills unpaid by Mother, with Mother to pay Father the remaining balance. The trial court incorporated a child support worksheet, requiring Mother to pay $225.00 per month. Pursuant to a motion filed by Father, the trial court later established that both Mother's child support payment and a $100.00 payment toward the unpaid medical bills were due on the first of each month.

Mother appealed the trial court's order to this Court on November 26, 2008. The matter was remanded to the trial court in May 2009 for the resolution of Father's motion for specific findings of fact, and the trial court entered its findings on October 8, 2009. The trial court found, inter alia, that the child's best interest required Father to be named primary residential parent.

This Court entered its judgment on July 13, 2010. *See In re Drake L.*, No. M2008-02757-COA-R3-JV, 2010 WL 2787829 (Tenn. Ct. App. July 13, 2010). We affirmed the trial court's findings that a material change in circumstance had occurred and a change in custody was in the child's best interest, but we vacated the trial court's determination of Mother's child support obligation and reversed the trial court's refusal to award Father

retroactive child support. Thus, the matter was remanded to the trial court for resolution of two issues: the recalculation of Mother's ongoing child support obligation "based on the earning abilities of the parties[,]" and the calculation of Mother's retroactive child support obligation from Father's December 2007 petition for custody to the trial court's November 2008 ruling.

The trial court issued its order on remand in December 2010. Therein, the trial court stated that Mother's child support obligation for June 2008 through November 2010 would be calculated using updated income figures for both parties. Mother was credited for prior payments and Father was credited for covering the child in his health insurance coverage. Mother's responsibility for $3,376.52 in unpaid medical bills remained in effect.

Eventually, the matter was heard again in March 2012. By order of August 1, 2012,[2] the trial court established that Mother owed $11,400.00 in child support for June 2008 through November 2010.[3] This arrearage was combined with the outstanding medical bill balance for a total judgment against Mother of $14,776.52. The trial court further set Mother's current child support obligation at $518.00 per month, to begin in April 2012.

Over the ensuing years, Mother's arrearage continued to grow, resulting in numerous petitions for contempt filed by the district attorney's office.[4] The final petition for contempt was heard in April 2021. The trial court determined that Mother's failure to pay child support as ordered was willful.[5] Also at that time, the trial court determined that the child had been emancipated in May 2020. As a result, Mother's current child support obligation was retroactively terminated as of May 2020. By order of April 13, 2021, Mother was ordered to pay $220.00 per month toward her outstanding child support arrearage balance of $34,389.40.

Mother filed a pro se notice of appeal to this Court on August 12, 2022. The notice indicated that Mother was appealing the trial court's August 2012 order. On August 17, 2022, this Court ordered Mother to pay the filing fees and litigation tax required by Tennessee Rule of Appellate Procedure 6 within fourteen days.[6] The order provided that

---

[2] The order was dated nunc pro tunc to March 2, 2012.

[3] This amount was based on child support worksheets submitted by Father using Mother's income as established at the May 2008 hearing and Father's income as supported by his W2 forms. Applying these figures, Mother owed $420.00 per month for June through December 2008, $412.00 per month for January through December 2009, and $406.00 per month for January through November 2010.

[4] Mother was represented by appointed counsel for some of the contempt proceedings.

[5] Mother received a delayed jail sentence for her contempt, but the sentence was suspended based on Mother's compliance with the prior sentencing conditions.

[6] By the same order, Mother's request for leave to proceed as an indigent person was denied. Rule 6 provides, in relevant part:

> Unless an appellant is . . . permitted to proceed on appeal as an indigent person, the appellant shall pay to the clerk of the appellate court all applicable fees established by

"[f]ailing to pay the filing fees and litigation tax within fourteen days may result in dismissal of the appeal without further notice." *See* Tenn. R. App. 6(a). Mother's appeal was then involuntarily dismissed by order of September 2, 2022, after Mother did not pay the fees as ordered. *See* **Lewis v. McGuire**, No. M2022-01117-CV-R3-JV. This ruling was not appealed. The mandate in that appeal was issued November 18, 2022, and the matter was remanded to the trial court.

Then, on June 28, 2024, Mother filed a "Motion Hearing to Request Motion to Dismiss" in the trial court pro se. Mother requested a hearing "so that a modification [of] custody case can officially be dismissed for failure to complete, fraud upon the courts, and denial of procedural process per direction of the courts." The trial court denied Mother's motion by order of August 16, 2024. The trial court explained that Mother had not appealed its April 2021 order terminating Mother's child support obligation as of May 2020 and setting a $220.00 monthly payment toward her child support arrearage. Thus, the order became final, and the trial court no longer had jurisdiction to modify the order.

It is from this August 2024 order that Mother now appeals. In lieu of a substantive argument, Father's response asserts that the appeal should be dismissed.

## II. ANALYSIS

We note that Mother is proceeding pro se in this appeal, as she has done for the majority of this litigation, and as such is granted "a certain amount of leeway in drafting [her] pleadings and briefs." **Young v. Barrow**, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citations omitted). We "measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers." *Id.* (citations omitted). Yet, "[p]ro se litigants must comply with the same substantive and procedural law to which represented parties must adhere." **Chiozza v. Chiozza**, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009). Consideration of Mother's appellate brief and the record in this case reveals several barriers, both procedural and substantive, that prevent effective review of Mother's requests for relief.

The Tennessee Rules of Appellate Procedure and the Rules of the Court of Appeals set forth rules regarding appellate practice, specifically, the form and content of a party's brief. Rule 27 of the Tennessee Rules of Appellate Procedure provides that the brief of an appellant shall contain the following:

order or rule of the Supreme Court. If the appellant fails to pay the applicable litigation taxes or fees or to establish indigency or an appropriate exemption, the appellate court may issue an order requiring the appellant to show cause why the appeal should not be dismissed for failure to pay the applicable litigation taxes or fees.

Tenn. R. App. P. 6(a).

(1) A table of contents, with references to the pages in the brief;
(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
(3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;
(4) A statement of the issues presented for review;
(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
(7) An argument, which may be preceded by a summary of argument, setting forth:

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27(a). Rule 6 of the Rules of the Court of Appeals of Tennessee separately describes requirements for the content of an appellant's argument "in regard to each issue on appeal." Rule 6 requires:

> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue . . . with citation to the record where the erroneous or corrective action is recorded.
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
> (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
> (4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

Tenn. R. Ct. App. 6(a).

It certainly appears that Mother was aware of the obligations set out in these Rules,

as Mother's brief contains each of the sections required by Rule 27. Mother's citations, both to legal authority and to the record, however, leave much to be desired.

On the face of the brief, Mother appears to have attempted to support her argument with citations to the authorities. Mother's table of authorities includes thirteen cases, statutes, and rules. While most of these authorities are indeed cited in the argument section of her brief, another twenty authorities are cited in the body of her brief without being included in the table. An additional forty-two cases, statutes, and rules are then included in an appended table of authorities with a brief statement of each authority's general theme. Clearly, simply listing legal authorities at the end of one's brief does not amount to compliance with Rule 27(a)(7), which requires an appellant to "cite relevant authority in the argument section of the brief[.]" *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (citations omitted); *see also* *Tennesseans for Sensible Election Ls. v. Slatery*, No. M2020-01292-COA-R3-CV, 2021 WL 4621249, at *6 (Tenn. Ct. App. Oct. 7, 2021) (describing the "explanation of how the cited legal principles apply to the facts in this case" as a "necessary" part of the appellate brief).

Moreover, we question the validity and relevance of several cases included in the body of Mother's argument. From our review, Mother cites four cases for propositions they do not discuss. *See* *Staats v. McKinnon*, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006) ("It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court." (citing *Shousha v. Matthews Drivurself Serv., Inc.*, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (1962))). Mother also includes inaccurate quotations from two cases, incorrect citations from a different two cases, and incomplete citations from an additional two cases. Thus, two-thirds of the cases that were actually cited in the argument section of Mother's brief are, at best, irrelevant.[7] Citation to relevant authority is an integral part of argument to this Court. It is therefore difficult to find Mother's argument, lacking citation to relevant legal authority to explain how the trial court erred and why she is entitled to relief, more than merely skeletal.[8] *See* *Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or

---

[7] At worst, the veracity of computer-generated research was not verified prior to its inclusion in Mother's brief, or else these inaccurate citations were knowingly included in the hopes that we would not look beyond the superficial presence of citation to legal authority. Either possibility would run contrary to the representations Mother made to this Court in signing and submitting her appellate brief. *See* Tenn. R. Ct. App. 17.01 ("By presenting to the court (whether by signing, filing, submitting, or later advocating) a . . . brief, motion or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the issues, claims, defenses, and other legal contentions therein are warranted by existing law . . . .").

[8] The remainder of the caselaw citations relate to the standard of review and the potential for equitable relief following fraud on the court, also not particularly relevant to the issues properly before this Court, as discussed, *infra*.

merely constructs a skeletal argument, the issue is waived.").

Mother also appears to have made a valiant effort to make appropriate references to the record. To be sure, Mother's brief is full of citations to the record. Unfortunately, however, these citations bear little resemblance to the record provided to this Court on appeal. The volume and page numbers provided by Mother, whether read as citations to the record's Bates numbering or its physical pagination, relate to filings wholly irrelevant to the fact purportedly being referenced. And while Mother includes page and line number citations to the transcript of the hearing on her June 2024 motion, the provided transcript contains neither page and line numbers nor enough pages for the provided citations to be applicable. In other words, despite Mother's attempt to include proper citations to the record, we are left unable to verify her allegations without scouring the record ourselves. *See Bean*, 40 S.W.3d at 56 (noting that "[t]his Court is under no duty to verify unsupported allegations in a party's brief"). This simply does not comply with either Rule setting out appellate briefing requirements, with both calling for a litigant's factual allegations to be supported by citation to the record. *See* Tenn. R. App. P. 27(a)(6) (requiring citations to the record in the statement of facts, (7) (requiring citations to the record in the argument); Tenn. R. Ct. App. 6(a) (requiring citations to the record showing the alleged error, the challenge to the alleged error, the resulting prejudice, and all determinative facts). This noncompliance has significant consequences under Rule 6, which provides that:

> No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. R. Ct. App. 6(b); *see also Com. Bank, Inc. v. Summers*, No. E2010-02170-COA-R3-CV, 2011 WL 2673112, at *2 (Tenn. Ct. App. July 11, 2011) ("We have previously held that a litigant's appeal should be dismissed where his brief does not comply with the applicable rules, or where there is a complete failure to cite to the record." (citing *Duchow v. Whalen*, 872 S.W.2d 692 (Tenn. Ct. App. 1993): *Lucas v. Lucas*, 1998 WL 136553 (Tenn. Ct. App. Mar. 27, 1998))).

It is true that Mother is proceeding pro se in this appeal and therefore may not be fluent in the Rules of this Court. However, it is well settled that, "[w]hile a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, '[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts.'" *Chiozza*, 315 S.W.3d at 487 (first citing *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); and then quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)). And again, pro se litigants are bound by the same substantive and procedural rules as represented parties. *Id.* (citing *Hodges*, 43 S.W.3d at 920–21); *see also Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App.

1988) ("*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden.").

This Court has repeatedly held that "profound deficiencies [like those found in Mother's brief] render[ ] appellate review impracticable, if not impossible." ***Owen v. Long Tire, LLC***, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011) (citing ***Missionary Ridge Baptist Church v. Tidwell***, No. 89-356-II, 1990 WL 94707, *2 (Tenn. Ct. App. July 11, 1990) (refusing to rely on the brief of the appellant because it did not contain references to the record either in the statement of facts or the argument section of its brief)). We are not responsible for "scouring the appellate record for any reversible error the trial court may have committed." ***Id.***; *see also* ***Mabry v. Mabry***, No. 03A01-9106CH207, 1992 WL 24995, at *1 (Tenn. Ct. App. Feb. 14, 1992) ("It is not incumbent upon this Court to sift through the record in order to find proof to substantiate the factual allegations of the parties."). And "[c]ourts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." ***Bean***, 40 S.W.3d at 55 (listing cases). *But see* ***DiNovo v. Binkley***, 706 S.W.3d 334, 337 (Tenn. 2025) (noting that cases so waiving a party's argument "usually involve egregious errors that prejudice the opposing party, force the court to act as a party's counsel, or otherwise significantly frustrate the court's ability to decide an appeal"). In particular, "the Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." ***Bean***, 40 S.W.3d at 54–55 (citing ***Crowe v. Birmingham & N.W. Ry. Co.***, 156 Tenn. 349, 1 S.W.2d 781 (Tenn. 1928)). *But see* ***DiNovo***, 706 S.W.3d at 337 ("Our Court, however, has never immunized courts from appellate review when they decline to consider an appeal because of a briefing deficiency. To the contrary, courts always must reasonably exercise their discretion in this context, keeping firmly in mind Tennessee's longstanding policy favoring resolution of appeals on the merits." (citation omitted)).

We recognize that there are times when this Court, in the discretion afforded it under Rule 2 of the Tennessee Rules of Appellate Procedure, may waive the briefing requirements to adjudicate the issues on their merits.[9] *See* ***DiNovo***, 706 S.W.3d at 336 noting that "Tennessee courts must reasonably exercise their discretion to excuse technical deficiencies that do not significantly impede the appellate process"). This may occur on occasion when, for example, resolution of the case impacts innocent parties such as

---

[9] That rule provides, in relevant part:

> For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]

Tenn. R. App. P. 2 (listing exceptions not at issue here).

children. *See Chiozza*, 315 S.W.3d at 489 (noting that the briefing requirements are more likely to be waived "in cases involving domestic relations where the interests of children are involved"); *Wadhwani v. White*, No. M2015-01447-COA-R3-CV, 2016 WL 4579192, at *8 (Tenn. Ct. App. Aug. 31, 2016) (concluding that "due to the length of time this domestic relations litigation involving the interests of children has been ongoing, this is an appropriate case in which to exercise our discretion to waive the briefing requirements in order to adjudicate certain issues on the merits"). While this appeal ultimately stems from the trial court's custody and child support decisions, the "child" at issue has long since reached adulthood. Thus, "it appears that the issues regarding the child[] have long since been resolved and the only issues remaining concern squabbles among adults regarding financial matters." *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015) (declining to address such post-divorce financial matters when the appellant failed to include relevant legal authority to support her argument).

The substance of Mother's brief, moreover, further solidifies our determination that this is not the appropriate case to waive this Court's well-settled briefing requirements. Although Mother raises eight issues on appeal,[10] the essence of her argument is twofold: (1) the trial court did not follow the proper procedure before issuing a temporary restraining order against her in 2007 and awarding Father primary custody of the child in 2008, and

---

[10] Taken directly from her brief, Mother's issues on appeal are as follows:

　　1. [Did t]he trial court and appellate court err in changing custody without compliance with statutory requirements and in failing to hold final hearings?
　　2. [Did t]he trial court err in failing to comply with the Tennessee Court of Appeals' 2010 remand instructions to recalculate child support based on verified income?
　　3. [Did] Magistrate Judge Allen Kern and ADA Stephen Powers lack the legal authority and jurisdiction to enforce child support orders, and did their actions constitute a clear absence of jurisdiction?
　　4. [Did t]he trial court improperly treat temporary child support orders as permanent without holding the legally required final hearings in a child modification case, resulting in prolonged enforcement of void orders?
　　5. [Did t]he trial court err by misapplying Tennessee Code [Annotated] § 36-5-101 in a child modification case rather than a child support-only case, leading to improper child support enforcement, and did the enforcers act in clear absence of jurisdiction by acting on fraudulent orders?
　　6. [Did t]he trial court err in failing to address allegations of fraud upon the court, treasonous acts (civil and criminal), and interstate commerce violations despite repeated reports to the Department of Human Services, the Child Support office, and law enforcement?
　　7. [Did] Judge Monsue act in clear absence of jurisdiction by continuing to preside over a child support matter when the child had reached the age of 23, and the temporary orders in place were void due to fraud and failure to comply with modification guidelines?
　　8. [Did t]he trial court, in conjunction with [Father], intentionally use child support demands as a tool for custodial interference and visitation denial?

(2) the trial court did not properly calculate her child support obligation on remand in 2012, rendering void the child support order and all subsequent efforts to enforce it.

Mother's first argues that the trial court entered the 2007 restraining order without conducting a hearing and issuing findings. Mother asserts that the trial court erred in modifying the custody arrangements set out in the parties' 2004 parenting plan without "making the necessary findings of a material change in circumstances and without evaluating the child's best interests[.]" However, these claims are similar to those previously addressed by this Court in relation to Mother's November 2008 appeal, implicating the law of the case doctrine. As the Tennessee Supreme Court has explained,

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication.

*Memphis Publg. Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (internal citations omitted).

Simply put, "a court will generally refuse to reconsider an issue that has already been decided by the same court in the same case." *In re Neveah W.*, 525 S.W.3d 223, 236 (Tenn. Ct. App. 2017). And here, both the trial court's initial failure to issue findings to support its modification of custody and the ultimate merits of its subsequently issued findings were addressed by this Court in *In re Drake L.*, 2010 WL 2787829. First, Mother's appeal was remanded to the trial court in May 2009, "for the limited purpose of ruling on [Father's] motion for specific findings of fact[,]" which the trial court did by order of October 2009. *Id.* at *2–3. Second, upon review of the record following the entry of the trial court's findings, we explicitly held that there was "sufficient evidence to support the trial court's decision that a material change of circumstance occurred," *id.* at *6, and that "the evidence does not preponderate against the trial court's finding that a change in custody was in the best interest of Drake L." *Id.* at *8. Because we have already affirmed the trial court's decision to modify the parties' 2004 parenting plan, we decline to consider the issue again in this appeal.

Mother's second argument is that the trial court failed to properly calculate her income in setting her child support obligation as directed on remand. *See id.* at *9 (holding that the trial court's "child support determination should be set aside and recalculated based on the earning abilities of the parties."). Mother asserts that the trial court's error rendered void its 2012 order, totaling her child support arrearage and setting her ongoing child

support obligation. In turn, all subsequent efforts to enforce this child support order were similarly unlawful.[11] Unfortunately for Mother, these issues are simply not properly before this Court. The record contains no indication that Mother filed a timely appeal from any of the post-remand orders she now asserts were void. *See* Tenn. R. App. P. 4(a) (providing that appeals as of right "shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from"); ***Albert v. Frye***, 145 S.W.3d 526, 528 (Tenn. 2004) (noting that this "thirty-day time limit for filing a notice of appeal is mandatory and jurisdictional in civil cases"). And while Mother did eventually appeal the trial court's most recent child support order, issued in April 2021, that appeal was involuntarily dismissed for failure to pay court costs. Any objection Mother had to the trial court's calculation of her child support obligation has long since been waived.[12] *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Notably, Mother does not include any discussion of the trial court's final decision—the 2024 denial of Mother's "Motion Hearing to Request Motion to Dismiss"—in her brief. Mother offers no argument that the trial court erred in holding that the April 2021 order had not been timely appealed and was thus final, or even that the trial court erred in re-avowing the merits of that order. We have repeatedly held that an appellant's failure to craft a more-than-skeletal argument that is actually responsive to the trial court's ruling may result in waiver on appeal.[13] *See* ***McNeill v. Blount Mem'l Hosp. Inc.***, No. E2022-

---

[11] Beyond asserting that the child support orders and findings of contempt were void, Mother alleges that the trial court judge and the assistant district attorney acted outside of their legal authority in enforcing the child support orders. Mother also levies allegations that the conduct of the trial court judge and assistant district attorney violated her due process rights and the U.S. Commerce Clause and amounted to fraud on the court and treason. However, neither the trial court judge nor the assistant district attorney have been made a party in this case. Mother also raised these issues in federal court, where the Sixth Circuit Court of Appeals affirmed the dismissal of her complaint, citing judicial and sovereign immunity. *See* ***McGuire v. Tennessee***, No. 22-5614, 2023 WL 9289932, at *3–4 (6th Cir. Mar. 17, 2023), *cert. denied*, 144 S. Ct. 218, 217 L. Ed. 2d 91 (2023).

[12] Although Mother cites ample authority purportedly indicating that an order entered without jurisdiction is void, our thorough review of her authorities offers no support for the assertion that an alleged error in the way child support was calculated when that issue was specifically remanded to the trial court amounts to a lack of subject matter jurisdiction such that years of subsequent non-appealed orders are a nullity.

[13] In his brief to this Court, Father asserted that this appeal should be dismissed as "[t]he time frame to appeal has been over[.]" In her reply brief, Mother emphasized only that this appeal was filed within thirty days of the trial court's order addressing her most recent filing. Mother did not, however, offer any argument as to the August 2024 order's ruling that it lacked jurisdiction to review the merits of Mother's filing based on the finality of its earlier orders. *See* ***Legens v. Lecornu***, No. W2013-01800-COA-R3-CV, 2014 WL 2922358, at *17 (Tenn. Ct. App. June 26, 2014) (Kirby, J., concurring) (discussing the difference between the jurisdiction to review the disposition of an untimely motion and the jurisdiction to review the substance of the motion). So while a reply brief generally may not be used to correct deficiencies in principal briefs, ***Augustin v. Bradley Cnty. Sheriff's Off.***, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019),

00209-COA-R3-CV, 2022 WL 16955177, at \*7 (Tenn. Ct. App. Nov. 16, 2022) (holding that an argument was subject to waiver when the appellant's "brief contain[ed] no argument that addresse[d] the actual basis for the trial court's grant of summary judgment"); *Payne v. Bradley*, No. M2019-01453-COA-R3-CV, 2021 WL 754860, at \*7–8 (Tenn. Ct. App. Feb. 26, 2021) (holding that the appellant's argument was waived where the appellant provided "only a skeletal argument actually addressing the very foundation of the trial court's ruling against her" and therefore had "not properly appealed the dispositive issue in this appeal"); *Augustin*, 598 S.W.3d at 226–27 ("Appellant's initial brief contains no properly supported argument responsive to the trial court's dispositive ruling in this case. This failure would generally result in a waiver on appeal.").

Finally, we are unmoved by Mother's insistence that a ruling in her favor would "correct procedural and jurisdictional violations that undermined [her] custodial rights" and somehow help her foster a meaningful relationship with Drake. As noted at oral argument, Mother's parental rights were never terminated. *See Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 175 (Tenn. Ct. App. 2009) ("[A] case will generally be considered moot when the prevailing party will be provided no meaningful relief from a judgment in its favor." (quoting *Cnty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996))). And this Court simply has no authority over the custody of a competent adult.

In summary, Mother's brief fails to comply with the procedural requirements set out in Tennessee Rule of Appellate Procedure 27 and Rule 6 of the Rules of the Court of Appeals of Tennessee. While this Court has the discretion to waive such noncompliance for good cause in accordance with Tennessee Rule of Appellate Procedure 2, we decline to do so here based on the substantive deficiencies in Mother's brief. *See Bean*, 40 S.W.3d at 55; *Chiozza*, 315 S.W.3d at 492; *DiNovo*, 706 S.W.3d. at 337 (including among those situations where a party's argument has been waived, errors "significantly frustrat[ing] the court's ability to decide an appeal"). Accordingly, this appeal is dismissed and all other issues are pretermitted.

## V. CONCLUSION

Based on the foregoing, we dismiss this appeal and remand this matter to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Cassandra (Averitt) McGuire, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

Mother has not attempted to present a responsive argument, despite Father's request that the timing of this appeal should prove dispositive.

- 12 -